FILED

SEP 28 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **KENNETH N. THOMPSON, SR.,** ) | 12cv7827 |
| ) | Judge John Z. Lee |
| **Plaintiff,** ) | Magistrate Arlander Keys |
| ) | |
| VS. ) | |
| JPMORGAN CHASE BANK NA, QUANTUM ) | |
| SEVICING CORPORATION, AND RUSHMORE ) | |
| LOAN MANAGEMENT SERVICES LLC, ) | |
| ) | **JURY TRAIL DEMANDED** |
| ) | |

## COMPLAINT FOR MORTGAGE MODIFICATION LITIGATION

1. This is an action for money damages and a claim for violation of plaintiff's rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986 and the common law of the State of Illinois.

## JURISDICTION

2. The jurisdiction of this court is invoked pursuant to the Judicial code 28 U.S.C. §§ 1331, 1343(a). And the Constitution of the United States; and pendent jurisdiction as provided under U.S.C Section 1367 (a). For diversity jurisdiction purposes a natural bank is a citizen of the state designated as its main office on its organization certificate. JPMorgan Chase Bank N.A is on information and belief, a citizen of New York.

3. This court also has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C 1692 et seq

## VENUE

4. Venue is proper in this Court pursuant to 28 U.S.C._ 1391(b), in that the claims arose in the Northern District of Illinois as alleged below.

5. "CHASE and/or its LOAN SERVICERS" does substantial business within this Federal Judicial District, receives substantial compensation and profits from the servicing of home mortgage loans in this District, has made material omissions and misrepresentations, breached contracts and/or other promises, and engaged in unlawful practices in this District, so as to subject Defendants to personal jurisdiction in this District. In addition, several of the named plaintiffs reside in this District.

## UNDERLYING FACTS COMMON TO ALL COUNTS AND PARTIES

6. At all times relevant and herein mentioned, Plaintiff, Kenneth N Thompson, Sr ("THOMPSON" or "PLAINTIFF") was and is a United States citizen and resides in the Northern District of Illinois.

7. At all times relevant and herein mentioned, Plaintiff, JPMorgan CHASE Bank NA and/or its "LOAN SERVICERS" (Chase and/or its Loan Servicers). Defendant JPMorgan CHASE and/or its "LOAN SERVICERS" is a national banking association with corporate headquarters located at 270 Park Avenue, New York, NY 10017. JPMorgan CHASE Bank, N.A. and/or its "LOAN SERVICERS" is a wholly owned subsidiary of JPMorgan Chase & Co. ("JPMC"). On information and belief, JPMorgan "CHASE Bank, N.A. and/or its LOAN SERVICERS directed, controlled, formulated, and/or participated in the loan servicing activities of Defendant Chase and/or its Loan Servicers Home Finance, EMC, and Bear Stearns and is jointly and severally liable for their unlawful activities. In addition, because of the merger of "CHASE Home Finance LLC into JPMorgan "CHASE Bank, N.A. and/or its "LOAN SERVICERS", Defendant JPMorgan Chase and/or its Loan Servicers is the successor in interest to Defendant "CHASE Home Finance LLC. On information and belief, EMC servicing rights were transferred from EMC to JPMorgan "CHASE Bank, N.A. and/or its "LOAN SERVICERS" as of April 1, 2011, after the commencement of this action, EMC's website now states that "EMC Mortgage a registered trade service mark of JPMorgan CHASE & Co. and/or its "LOAN SERVICERS". JPMorgan "CHASE Bank, N.A. and/or its "LOAN SERVICERS" services loans under the EMC Mortgage name " EMC Mortgage, at https://www.emcmortgagecorp.com. Therefore, on information and belief, JPMorgan "CHASE Bank, N.A. and/or its "LOAN SERVICERS" directed, controlled, formulated, and/or participated in Defendant EMC's and Defendant Bear Stearns's loan servicing activities, has assumed liabilities therefore, and will continue to direct, control, formulate, and/or participate in these servicing activities in the future.

8. On September 25, 2008, JPMorgan Chase and/or its Loan Servicers & Co. purchased the banking operations of Washington Mutual Bank in a transaction facilitated by the Federal Deposit Insurance Corporation. As a part of this transaction, Defendant, JPMorgan Chase Bank, N.A. and/or its Loan Servicers acquired the loan servicing portfolio of Washington Mutual. JPMorgan Chase Bank NA continued operating using the Washington Mutual brand for several months after the sale. While some Plaintiffs' loans were serviced by Washington Mutual prior to the sale, at all times relevant to the allegations herein, JPMorgan Chase Bank, N.A. and/or its Loan Servicer was the servicer.

9. At all times relevant and herein mentioned, Defendant, Greentree Servicing, LLC ("Green Tree or Loan Servicer") is a Loan Servicer of JPMorgan Chase Bank, NA).

10. At all times relevant and herein mentioned, Defendant, Quantum Servicing Corporation ("Quantum" or Loan Servicer") is a Loan Servicer of JPMorgan Chase Bank, NA).

11. At all times relevant and herein mentioned, Defendant, Rushmore Loan Management Services, Inc. "Rushmore or Loan Servicer") is a Loan Servicer of JPMorgan Chase Bank, NA).

## AFFIDAVIT OF FACTS AND BACKGROUND ALLEGATIONS

12. On or July 5, 2005 Plaintiff entered in to a contract with Washington Mutual Home Loans for the purposes of purchasing Real property know as 6644 Maple Ct Monee, IL

13. On or around July 6, 2005 Plaintiff became incapacitated and had to liquidate his assets to pay the mortgage.

14. On or around August 2007 Plaintiff started recovering from his incapacitation and financial hardship.

15. On or around February 4, 2008 Plaintiff entered into a **"Trial Payment Plan"** with Chase and more of its loan servicers, Select Portfolio, Inc and that, Plaintiff **made three (3) contractual timely payments of $3,160.33, $3,159.33 and $3,159.33.** After Select Portfolio, Inc. received Plaintiffs' three (3) payments, Chase and/or its loan servicers transferred the debt to a new Servicer, Greentree Servicing, LLC ("GreenTree") who refused to acknowledge the **"Trial Payment Plan"** agreement with Servicer Select Portfolio, Inc. (Exhibits 1-2)

16. On or around August 2008 CHASE AND/OR ITS LOAN SERVICERS, Greentree, refused to honor previous servicers **"Trial Payment Plan"** and refused to accept future payments from Plaintiff. After Plaintiff pleaded with CHASE AND/OR ITS LOAN SERVICERS, GreenTree, requesting they honor the previous **"Trial Payment Plan"** and the **"Broken Promised Loan Modification agreement"**, Chase and/or its Loan Servicers Greentree agreed verbally and in writing that if Plaintiff paid $10,333.35 within a 30 day period that CHASE AND/OR ITS "LOAN SERVICERS Greentree, would complete the **"Permanent loan modification Agreement"**. Plaintiff made two (2) payments totaling $10,333.35 within a 30 day time frame (10\15\08 to 11\11\08). Plaintiff pleaded with CHASE AND/OR ITS "LOAN SERVICERS, Greentree, for several months requesting the **"Promised Permanent Loan Modification Agreement"** but after seven (7) months of phone calls, emails and faxes, CHASE AND/OR ITS LOAN SERVICERS, Quantum, transferred the loan again to a new servicer. No permanent Loan modification documents were ever forwarded to the Plaintiff. CHASE AND/OR ITS LOAN SERVICERS failed to execute the agreed Permanent Loan modification Agreement. (Exhibits 3-4)

17. On or around June 25, 2010 CHASE AND/OR ITS LOAN SERVICERS Quantum communicated with plaintiff via written demand for a payment in the amount of $2,237.63. Plaintiff submitted Check # 1049 in the amount of $2,237.63 **Quantum cashed Plaintiffs check on July 20, 2010** and refused future payments. CHASE AND/OR ITS LOAN SERVICERS, Quantum, refused to honor previous servicers **"Trial Payment Plan"** and the **"Broken Promised Peterman Loan Modification agreements"** and refused to accept future payments from Plaintiff. Plaintiff pleaded via emails, fax and phone calls with CHASE AND/OR ITS "LOAN SERVICERS, Quantum, requesting they honor the previous breached agreements and complete the **Permanent loan modification agreement.** CHASE AND/OR ITS LOAN SERVICERS, Quantum, entered plaintiff into a written **"Forbearance Agreement"** and verbally promised plaintiff that they would complete the **Permanent Loan Modification agreement.** CHASE AND/OR ITS LOAN SERVICERS, Quantum, eventually accepted subsequent payments in the amount of $2,237.63 monthly during a period from May 11, 2011 until April 3, 2012 Totaling $26,851.06 and Quantum has refused subsequent payments from Mr. Thompson. Plaintiff made all monthly payments timely without delay and in some instance before the due date (Exhibits 5-6). Chase and/or its Loan Servicers, Quantum, then transferred Plaintiffs Loan to a New Servicer.

18. On or around July 2012 Defendant, Chase and/or its Loan Servicers, Rushmore Loan Management Services, Inc. communicated with plaintiff verbally and in writing demanding the balance of the disputed debt and informed Plaintiff that if the disputed debt was not paid that the Foreclosure Sale would commence on September 5, 2012 (Exhibit 7 TO COME)

19. On or Around August 20, 2012 Plaintiff notified Chase and/or its Loan Servicers' (President, James Dimeon) verbally and in writing that the alleged balance of the debt was disputed and that Chase and/or its Loan Servicers breached **"Trial Payment Plans"**, **"Promised Permanente Loan Modification Agreements"** and **"Forbearance Agreements"** but defendants refused to respond to Plaintiff's written and verbal notifications. (Exhibit 8).

20. On or Around August 20, 2012 Plaintiff notified Chase and/or its Loan Servicers servicer Rushmore (President, Terry Smith) verbally and in writing that the alleged balance of the debt was disputed and that Chase and/or its Loan Servicers breached **"Trial Payment Plans"**, **"Promised Permanente Loan Modification Agreements"** and **"Forbearance Agreements"** but defendants refused to respond to Plaintiffs written and verbal notifications. (Exhibit 9).

21. On or Around August 20, 2012 Plaintiff notified Chase and/or its Loan Servicers' Attorney Jennifer Vander of Codillis and Associates verbally and in writing that the alleged balance of the debt was disputed and that Chase and/or its Loan Servicers breached **"Trial Payment Plans"**, **"Promised Permanente Loan Modification Agreements"** and **"Forbearance Agreements"** but defendants refused to respond to Plaintiffs written and verbal notifications. (Exhibit 10).

22. Plaintiff was successful in obtaining an Auto Loan in the amount of $26,000.00 with GMAC but only after Plaintiff provided GMAC with proof of the existing Forbearance agreement and copies of payments made on time to Chase and/or its Loan Servicers.

23. Plaintiff attempted several time to refinance his home without success because Chase and/or its Loan Servicers failed to report any of the Plaintiff's monthly mortgage payments that had been made timely.

24. Plaintiff had started restoring his credit with new auto loan and two unsecured credit cards, but Plaintiff was forced to file an "EMERGENCY BANKRUPTCY" to stop the Sale of his home because defendant Chase and/or its Loan Servicers and Attorney refused to honor previous verbal and written **"Trial Payment Plans"**, **"Promised Permanent Loan Modification Agreements"** and **"Forbearance Agreements"** .

### JURY DEMAND

25. The Plaintiff herby demands a trial by Jury.

### COUNT I
### BREACH OF CONTRACT/ BREACH OF DUTY OF GOOD FAITH OFR FAIR DEALING, AGAINST "JP MORGAN Chase and/or its Loan Servicers BANK NA", "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

NOW COMES Plaintiff Kenneth N Thompson, Sr., PRO SE, and for COUNT I of his complaint, and complaining of the defendants, **"JPMORGAN Chase and/or its Loan Servicers BANK NA"**, **"QUANTUM SEVICING CORPORATION"**, **AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"** and states as followed:

26. Plaintiff readopts and restates paragraphs 1 through 23 above as specifically alleged herein.

27. The Trial Payment Plans, Forbearance Agreements and Loan Modification agreements sent by Chase and/or its Loan Servicers to Plaintiff constitute a valid offer.

28. By executing the Trial Payment Plans, Forbearance Agreements and Loan Modification agreements sent by Chase and/or its Loan Servicers and returning it to Chase and/or its Loan Servicers along with the supporting documentations, Plaintiff accepted Chase and/or its Loan Servicers offers.

29. Alternatively, Plaintiff's return of the Trial Payment Plans, Forbearance Agreements and Loan Modification agreements sent by Chase and/or its Loan Servicers constituted offers. Acceptances of these offers occurred when Chase and/or its Loan Servicers accepted Plaintiff payments during the trial payment period and beyond.

30. Plaintiff's trial period payments to Chase and/or its Loan Servicers constitute consideration. By making those payments, Plaintiffs gave up the ability to pursue other means of saving his homes, and Chase and/or its Loan Servicers received payments it might otherwise not have received.

31. There is additional consideration in the form of agreements to undergo financial counseling and the provision of substantial financial documentations by Plaintiffs as a condition of the contract. This allowed Chase and/or its Loan Servicers to evaluate its option under the security agreement including the cost and benefits of foreclosure to it. Plaintiff was also required to make payments into a new escrow account.

32. In the alternative, the Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers is a type of binding Agreement for which the law does not require consideration.

33. Plaintiff and Chase and/or its Loan Servicers formed valid accounts.

34. To the extent that the Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers were subject to a condition subsequent that required Plaintiff and Chase and/or its Loan Servicers members to submit additional documents for "Chase and/or its Loan Servicers review. Plaintiff complied with that condition. In the alternative, the condition subsequent was waived by Chase and/or its Loan Servicers in that it failed to timely raise it. Further, Chase and/or its Loan Servicers is stopped from raising non-compliance with that condition by its conduct, including, without limitation,

continued acceptance of payments after expiration of the deadline for performance of the condition.

35. To the extent that Plaintiff rendered defective performance under the contract, this condition was waived and, therefore, excused by Chase and/or its Loan Servicers and/or it is stopped to assert it as a defense to Plaintiff's claims.

36. By failing to grant plaintiff permanent modifications by the close of the trial period defined in the contracts, Chase and/or its Loan Servicers breached those contracts and any further obligations by Plaintiffs remaining under the contract was excused.

37. Plaintiff remains ready, willing and able to perform under the contracts by continuing to make trail period payments and provide documentation but Chase and/or its Loan Servicers started refusing Plaintiffs payments.

38. Plaintiff has suffered harm and is threatened with additional harms from Chase and/or its Loan Servicers breach. Plaintiff's harm is measured by the difference between current circumstances and his circumstances they would have been in but for Chase and/or its Loan Servicers' breach.

39. The extent a Plaintiff in Part 1 of the Complaint accepted permanent modification, which the modification does not comply with the provisions of HAMP.

40. By making payments both during and after the Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers, Plaintiffs forewent other remedies that might be pursued to save his homes, pursing other strategies to deal with his defaults, such as selling his homes. In light of declining real estate market in the United States since July 2009, failure to market and sell the property at that time has reduced the amount the Plaintiff can recover from such sale. In addition, Plaintiff built up substantial and unmanageable delinquency in an amount exceeding that otherwise would have accrued absent the breach.

41. In addition to the lost opportunity cost of pursing other means of dealing with his defaults, when a permanent modification is not granted at the cost of the Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers, the borrower permanent modification terms and other options may be adversely affected and additional fees and chargers may be applied. On information and belief, Chase and/or its Loan Servicers has imposed on Plaintiff improper fees and cost related to loans in default during and after his trial period.

42. Plaintiff also suffered additional harm in the form of foreclosure and collection activity against his home.

43. Plaintiff has paid Chase and/or its Loan Servicers over $50,000.00 over a course of several Breached agreements and none of the Plaintiffs timely payments were reported on his credit reports. Additionally, Plaintiff has suffered additional harm of adverse credit reporting, thus undermining his credit standing for lower cost refinancing and other necessary credit transactions.

44. Plaintiff has lived in a state stressful anxiety because of the uncertainty in which the Chase and/or its Loan Servicers has placed him.

45. Plaintiff has experienced damages and suffered additional harm in the form of foreclosure/collection activity against his homes.

46. Plaintiff has hired two (2) different attorneys, William Spielberger and James Hardemon, and that Plaintiff has incurred legal expenses in excess of $5,000.00.

47. Chase and/or its Loan Servicers are obligated by contract and common law to act in a good faith and to deal fairly with each borrower.

48. The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performances.

49. Chase and/or its Loan Servicers routinely and regularly breaches this duty by:

   a) Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff.

   b) Failing to supervise its agents and employees properly including, without limitation, its loss mitigation and collection personnel and its foreclosure attorneys.

   c) Routinely demanding information it has already received.

   d) Making inaccurate calculations and determinations of Plaintiff's eligibility for HAMP.

   e) Failing to follow through on written and implied promises.

f) Failing to follow through on contractual obligations.

g) Failing to give permanent modifications and other foreclosure alternatives to qualified borrowers.

50. The actions constitute bad faith by Chase and/or its Loan Servicers.

51. On information and belief, Chase and/or its Loan Servicers financially benefit from its breaches in a variety of ways, including but not limited to not hiring sufficient staff to meet their obligations under HAMP and CHMAP, the imposition of fees and charges on borrowers' accounts during and after their trail periods, and obtaining greater fees from foreclosing than from modifying loans it services.

52. As a result of these failures to act in good faith and the absences of fair dealing, Chase and/or its Loan Servicers caused the Plaintiff harm as described below.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendants Chase and/or its Loan Servicers

b) Award Plaintiff $150,000 in compensatory damages.

c) Award Plaintiff punitive damages in amount of $100,000.

d) All pervious Attorney Fees that Plaintiff has incurred for above matters.

e) Order Appropriate injunctive relief, including without limitation, reformation of Plaintiffs contract, restitution, accounting, permanent loan modification.

f) Award any further relief that this Honorable Court deems just and equitable.

## COUNT II

### PROMISSORY ESTOPPEL, IN THE ALTERNATE AGAINST "JP MORGAN "CHASE AND/OR ITS "LOAN SERVICERS" BANK NA", "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

NOW COMES Plaintiff Kenneth N Thompson, Sr., PRO SE, and for COUNT II of his complaint, and complaining of the defendants, **"JPMORGAN CHASE BANK NA AND/OR ITS LOAN SERVICERS", "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"** and states as followed:

53. Plaintiff restates and readopts Paragraphs 1 through 50 as paragraph 50 of Count 1.

54. Plaintiff brings this claim on his behalf as described about. To the extent necessary to preserve these claims, Plaintiff also herby incorporate by reference, and plead in the alternative herein, the promissory estoppels claims set forth in Part 2 below.

55. Chase and/or its Loan Servicers, by way of its Forbearance and Loan Modification agreements sent by "Chase and/or its Loan Servicers Agreement, made a representation to Plaintiff that if he returned Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers, executed and with supporting documentation, he would receive a permanent modification.

56. Chase and/or its Loan Servicers' Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers was intended to induce Plaintiff to rely on them and make monthly forbearance payments.

57. Plaintiff did indeed rely on Chase and/or its Loan Servicers representation, by submitting Forbearance payments to Chase and/or its Loan Servicers.

58. Given the language in the Forbearance and Loan Modification agreements sent by Chase and/or its Loan Servicers, Plaintiff's reliance was reasonable.

59. Plaintiff's reliance was to his detriment. Plaintiff has yet to receive a permanent modification. By making Forbearance and Loan Modification payments both during and after the agreements, Plaintiff forewent other remedies that might be pursued to save his home, pursing other strategies to deal with his default, such as selling his home or refinance his home. In light of the declining real estate market in the United States since

July 2009, failure to market and sell property at that time has reduced the amount that the Plaintiff can recover from such sale.

60. In addition to the lost opportunity cost or pursing other means of dealing with their defaults, when permanent modification is not offered at the close of the Forbearance Modification agreements, but rather is offered at a later date, the modification does not comply with HAMP or other Loan Modification in house requirements, the Plaintiffs permanent modification terms are adversely affected, and additional fees and charges are applied. On information and belief, Defendant has imposed improper fees and cost on plaintiff during the trial period.

61. Plaintiff has also suffered detriment in the form of foreclosure and collection activity against his home.

62. Plaintiff has also incurred damages in reliance on the Forbearance and Loan Modification agreements sent by "Chase and/or its Loan Servicers " and its SERVICERS , i.e., "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" failure to provide permanent modifications, means that Plaintiff are now further in arrears than he would have otherwise been.

63. Plaintiff has been living in a state of stressful anxiety because of Defendants' conduct in the light of the ongoing risk of foreclosure.

64. Plaintiff has experienced harm in the form of:

## COUNT III

### VIOLATIONS OF STATE OF UNFAIR AND DECEPTIVE ACTS AND PRACTICES STATUTES AGAINST "JPMORGAN "CHASE AND/OR ITS "LOAN SERVICERS" BANK NA", "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

65. Plaintiff readopts and restates paragraphs 1 through 64 as paragraph 64 of Count II.

66. Plaintiff brings the following Consumer Claim under the consumer protection and unfair deceptive acts and practice laws of the State of Illinois within the Count, against Chase and/or its Loan Servicers . When greater details regarding the conduct of each Defendant become known, the Plaintiff will amend this Complaint as necessary. To

the extent necessary to preserve these claims, Plaintiff also herby incorporates by reference, and plead in the alternative herein, the Claims set forth in Part 2 below.

67. The acts and practices described in this Complaint occurred while Chase and/or its Loan Servicers was engaged in trade, business or commerce with the Plaintiff.

68. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" has violated the consumer protection and unfair and deceptive acts and practices laws of Illinois through the following acts and omissions:

a) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" engages in a widespread practice of instructing mortgagors to stop making mortgage payments under the false pretense that doing so will not hurt credit scores and is necessary for them to obtain a loan modification.

b) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" induces mortgagors' reasonable reliance on Chase and/or its Loan Servicers to modify his mortgage loans upon successful completion of performance pursuant to agreements, including making payments and submitting documentation

c) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" fails to grant permanent HAMP or CHAMP loan modifications or advise individuals of their ineligibility pursuant to the terms of the form Forbearance Agreements

d) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" engages in the widespread misrepresentation of the status of loan modification applications

e) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" fails to hire, retain, employ, and supervise adequately trained staff, including knowingly designing and maintaining a loan modification system that was riddled with flaws and intentionally staffed with employees who lacked training, experience, education, or skill to properly perform their obligations.

f) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" employs policies and practices that incentivize employees to rush customers off the telephone as quickly as possible as to frustrate customers, the intended result being that instead of complaining, the customers would give up and accept "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" faulty eligibility determinations. Chase and/or its Loan Servicers ensure further frustration by implementing a "one call resolution: policy under which customers would never speak to the same service representative twice.

g) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" routinely loses mortgagors' loan documents, modification papers, and other necessary materials to evaluate eligibility and routinely rejects these customers' completely performed obligation on false and incorrect grounds

h) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" routinely requires borrowers to submit and re-submit duplicative financial information of documents already in "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" possession, claiming that it would not review a borrowers eligibility until and unless these documents are submitted time and time again

i) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" fails to keep accurate records of mortgagor accounts, including accounting for fees, payments, credit, arrearages, and amount owed

j) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" routinely and systematically makes incorrect calculations and determinations at improper times during the loan modification process, falsely claiming that Chase and/or its Loan Servicers was permitted to do so under applicable directives and that they were unable to achieve target income to payment ratios, and routinely provides customers with other false, re-textual reasons for refusing to extend, eligible borrowers their offers for permanent modification

k) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" engages in a widespread practice of causing improper interest and fees to accrue.

l) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" expels Plaintiff and others from modification programs despite the fact that the Plaintiff and others complied with all the terms and requirements thereof

m) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" engages in a widespread practice of making improper reports to credit reporting agencies

n) "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" engages in a widespread practice of unlawfully proceeding with foreclosures based on mortgagors' failure to meet impossible and shifting demands

69. These acts and omissions constitute bad faith.

70. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" conduct described in this Complaint is willful and knowing and constitutes intentional misrepresentations, false promises, and concealment, suppression, and omission of material facts, and further constitutes an unfair business practice.

71. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" unconscionable, unfair, and deceptive acts, practices, omissions, and representations as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers.

72. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and

reasonably foreseeable to mislead Plaintiff and members of the classes acting reasonably and to his detriment.

73. Plaintiff has suffered injury as a result of "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" conduct described in this Complaint. Plaintiff has suffered financial harm by paying money to Chase and/or its Loan Servicers that they would not have paid but for "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" conduct. Some of "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" borrowers were further injured by being subject to unnecessary or improper foreclosure processes. Moreover, Plaintiff have suffered undue psychological stress and damaged credit, while enduring "Chase and/or its Loan Servicers and/or it's "LOAN SERVICERS" unlawful, unfair, and/or fraudulent practices. Plaintiff is threatened with additional harm as a direct and proximate result of "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" violations. By making payments under forbearance Agreements and by continuing to make mortgage payments, Plaintiff forgo other remedies that might be pursued to save his home and his precious cash resources, or pursuing other strategies to deal with his defaults, e.g., selling or renting the homes. In light of the declining real estate market in the United States since July 2009, failure to market and sell the property at that time has reduced the amount that Plaintiffs can recover from such sale. Plaintiff has also given up valuable time and effort to meet "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" demands.

74. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" conduct as described throughout this Complaint constitutes unfair or deceptive acts or practices in the conduct of trade or commerce that harmed plaintiff. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" unfair or deceptive acts practices constitute multiple violations of 815 ILL. COMP. STAT. 505/2.

75. These acts or practices proximately or actually caused injury to the plaintiff in the manner described above. As a result, Plaintiff seeks recovery as outlined below in the Prayer for Relief.

**Modification Process- Facts and Claims**

76. "Chase and/or its Loan Servicers and/or its "LOAN SERVICERS" misconduct does not end with failure to honor forbearance agreements. It also fails to honor its promises to consider borrowers for temporary and permanent modifications. Its processes for communicating with borrowers who seek modifications and for acting on their applications is so defective as to constitute actionable unfair and deceptive acts and practices and to require related common law remedies for the affected borrowers.

77. Plaintiff while seeking a modification have found himself caught in a seemingly endless cycle in which Chase and/or its Loan Servicers promises modification, or timely consideration of an application for a modification, and then fails to honor those promises. In particular, Chase and/or its Loan Servicers induces borrowers to keep paying modified payments—*i.e.*, amounts that are not the same as what was owed under his original Notes—based on various misrepresentations and deceptive statements. In the course of accepting borrowers' modified payments month after month, Chase and/or its Loan Servicers repeatedly requests documentation necessary to determine homeowner eligibility for modifications, which Chase and/or its Loan Servicers systematically mishandles when received—either losing or destroying borrowers' documents and loan files. Meanwhile, fees accrue on mortgagor accounts, as they are driven deeper into debt. Even after complying in good faith with all of Chase and/or its Loan Servicers requests for months or even years, homeowners often never receive a modification and carry far more debt than they would have had they known that Chase and/or its Loan Servicers would fail to properly consider the merits of their modification applications.

78. The Plaintiff have experienced this pattern and practice—and the results (or lack ) thereof after many months or years following "Chase and/or its Loan Servicers instructions— demonstrate that Chase and/or its Loan Servicers' business practices are deceptive, fraudulent, and misleading.

79. What speaks the loudest in this case is all the existing loan modification litigation pending against Chase and/or its Loan Servicers.

**CHASE AND/OR ITS LOAN SERVICERS Modification Process Consists of a Course of Conduct.**

80. Plaintiff has experienced the following course of conduct by Chase and/or its Loan Servicers :

81. **Hardship and Default**. Plaintiff has experienced some form of hardship that has caused him to (1) fall behind on his mortgage payments, and/or (2) alert Chase and/or its Loan Servicers that he may have difficulty making payments in the future become delinquent by intentionally missing payments.

82. **Forbearance/Modification Packages**. Chase and/or its Loan Servicers use's oral and written temporary agreements or payment plans, coupled with verbal assurances as described below, to induce mortgagors to make modified payments, send

documentation, and otherwise participate in its mortgage modification process. Instead of receiving timely results, mortgagors find themselves in an endless process, while their debt increases by the day. In response to promises of forbearance, an eventual modification, and/or a timely review of a modification application, mortgagors follow Chase and/or its Loan Servicers verbal and written payment plans, including after the completion of written agreements or payment plans—such as, Forbearance Agreements, and Repayment Agreements—demonstrating their genuine reliance on Chase and/or its Loan Servicers illusory promises.

83. **Verbal Assurances**. Chase and/or its Loan Servicers encourages mortgagors to participate in its temporary payment plans by making standard and uniform verbal promises regarding its modification programs, including that modification will be granted upon completion of certain payment plans and other compliance by the homeowner, that Chase and/or its Loan Servicers will timely review and process loan modification applications, that Chase and/or its Loan Servicers will halt foreclosure proceedings during the modification process, and that certain written materials which otherwise do not reference a modification *are* part of the modification process. For example

   a. Chase and/or its Loan Servicers informed Plaintiff that if he paid $10,333.00 payment within a 30 day period that he would eventually get a loan modification. Chase accepted the payments from Plaintiff during the 30 day period but never completed a loan modification.
   b. Chase and/or its Loan Servicers sent a demand to Plaintiff requesting he make a payment of $2,237.66 and after Plaintiff made the payment and the payment was accepted and cashed Chase and/or its Loan Servicers refused to accept any more payments from Plaintiff.
   c. Chase and/or its Loan Servicers informed Plaintiff make your payment timely and we will get you a principle balance reduction and permanent loan modification". Plaintiff made eleven payments to Chase and/or it's Loan Servicers in the amount of $2,237.66 and then Chase transferred the file to another Loan Servicer.

84. **A Protracted Process**. Plaintiff fails to obtain the relief they seek from Chase and/or its Loan Servicers in a timely manner. Chase and/or its Loan Servicers promises to the borrower that his applications will be reviewed in 90-120 days. However, even when Chase and/or its Loan Servicers does offer a modification, Chase and/or its Loan Servicers grossly delays modifications, thereby increasing its servicing fees by increasing principal balances, imposing late charges, and imposing other expenses. Chase and/or its Loan Servicers pursue foreclosure and hangs foreclosure over mortgagor's heads as it drags him through the modification process.

85. **"Lost" or Destroyed Documents.** Plaintiff has experienced a remarkably uniform pattern of repeatedly sending the same documents to Chase and/or its Loan Servicers, receiving confirmation that documents are received and adequate, and then being told that the documents are lost, missing, incomplete, or otherwise defective. This causes repeated provision of the same or similar documents by Plaintiff —a waste of his time, a drain on his resources, and a continual source of stress and frustration.

86. **Unexplained and/or Unreasonable Fees and Interest.** Plaintiff has been charged late fees while he is making timely, regular monthly payments, foreclosure-related fees that are excessive and/or inadequately disclosed, and wholly unexplained "other" fees, including Western Union or telephone payment fees. Additionally, Plaintiff has been penalized by having interest imposed on paid principal amounts, because Chase and/or its Loan Servicers refused to properly apply payments.

87. **Plaintiff's Good Faith Performance and Compliance.** Plaintiff has in good faith sought to save his home from foreclosure and obtain permanent loan modifications so that they can move on with his live. He has asked for help, followed up, and attempted to navigate Chase and/or its Loan Servicers impenetrable bureaucracy. They have sent in countless payments requested by Chase and/or its Loan Servicers . They have sent in the same documents many times over. Chase and/or its Loan Servicers have wasted hours of his time, inexplicably ignored his performance, accepted his regular and voluminous mortgage payments, and taken advantage of mortgagors who have little or no bargaining power.

88. **Damaged Credit.** Plaintiff has faced prolonged damaged credit as a result of Chase and/or its Loan Servicers failures to promptly process his loan modification applications and payments.

89. Chase and/or its Loan Servicers use several types of written temporary agreements and payment plans as part of its modification process. These plans require the homeowner to make payments different than their original payment for some period of months. They are routinely the platform for Chase and/or its Loan Servicers instructions to continue making the same payments even after the written plans or agreements have concluded.

**Promises and Representations Contained in Forbearance agreement Cover Letters.**

90. While Plaintiff has brought contract and other claims arising out of the "FORBARANCE AND/OR LOAN MODIFICATION AGRREMENTS" document

alone, as set forth in Part 1, essential to Plaintiff's allegations in Part 2 is that Chase and/or its Loan Servicers extracts payments *beyond* those due under the HAMP, Chase and/or its Loan Servicers Agreement by promising Plaintiffs that a modification is forthcoming and they should continue making payments as if pursuant to their "FORBARANCE AND/OR LOAN MODIFICATION AGRREMENTS" even after the trial period has ended. Indeed, Plaintiff routinely made more "FORBARANCE AND/OR LOAN MODIFICATION AGRREMENTS" payments than were required by their "FORBARANCE AND/OR LOAN MODIFICATION AGRREMENTS" Agreement.

91.  HAMP "FORBARANCE AND/OR LOAN MODIFICATION AGRREMENTS"s are typically accompanied by a "Trial Period Cover Letter." An example of such a letter is attached hereto as (Exhibit 11a and 11b). The "Trial Period Cover Letter" contains assurances that there "are no fees under the Home Affordable Modification program." and that "if you fulfill the terms of the trial period including, but not limited to, making the trial period payments, we will waive ALL unpaid late charges at the end of the trial period." On information and belief, Chase and/or its Loan Servicers  charged and collected fees in connection with its mortgage modification scheme.

92.  The "Trial Period Cover Letter" states that "it may take up to 30 days for us to receive and review your documents. We will process your modification request as quickly as possible." (Exhibit TO COME). The cover letter also states that "as long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started." (Exhibit TO COME).

**Forbearance Agreements and Repayment Agreements.**

93.  Chase and/or its Loan Servicers  offered Plaintiff who have requested and applied for a modification temporary agreements or payment plans, which come in two primary forms: Forbearance Agreements and Repayment Agreements. These plans require payments of varying amounts, ranging from zero dollars per month, to more than the homeowner's original payment. They do not on their face promise modifications—and may not even mention modifications—but that is not the point. Homeowners who have requested and applied for a modification are often sent temporary payment plans as part of Chase and/or its Loan Servicers Forbearance/Modification Package and told by Chase and/or its Loan Servicers representatives that they will be given a modification— or at least a decision—upon completion of the plans. Thus, while temporary payment plans usually do not explicitly reference HAMP or modifications at all, they are unquestionably used in conjunction with verbal promises of a modification to engage

homeowners in Chase and/or its Loan Servicers  and/or its modification scheme. Furthermore, internal Chase and/or its Loan Servicers  documents obtained by Plaintiff reflect that it is Chase and/or its Loan Servicers  policy to promise modifications upon completion of both types of temporary payment plans.

**Forbearance Agreements.**

94.  Forbearance Agreements (also called Forbearance Plans, Special Forbearance Plans, or Reduced Payment Plans) supposedly allow borrowers to make reduced payments for a period of time, without risk of foreclosure or negative credit reporting. However, the Plaintiff on numerous instances made three (3) or more timely payments to Chase and/or its Loan Servicers .

95.  Examples of Forbearance Agreements are attached hereto as (Exhibits 11(a) and **11(b)**. On information and belief, Forbearance Agreements are standard forms—the terms of which were drafted entirely by Chase and/or its Loan Servicers —that Chase and/or its Loan Servicers  used and continues to use with mortgagors to whom Chase and/or its Loan Servicers  promises loan modifications. While Chase and/or its Loan Servicers Forbearance Agreements have evolved over time, they have generally had the same requirements, made the same promises, and, most importantly, served the same purpose within "Chase and/or its Loan Servicers  modification scheme, regardless of what version of Forbearance Agreement is used.

96.  In the context of Chase and/or its Loan Servicers Forbearance/Modification Packages, Forbearance Agreements are offered to homeowners who have applied for or requested a modification. Chase and/or its Loan Servicers  makes verbal assurances that the Forbearance Agreements *are* part of the modification program and that completion of a Forbearance Agreement will lead to a modification. Some versions of "Chase and/or its Loan Servicers Forbearance Agreements reflect this, explicitly stating that forbearance agreements are part of HAMP. (Example TO COME) ("The attached forbearance agreement is a pre-qualification agreement for the Home Affordable Modification Program (HAMP).

97.  Oral representations regarding modification, foreclosure, and credit reporting are an instrumental part of Chase and/or its Loan Servicers Forbearance/Modification Packages and routinely accompany Forbearance Agreements. Plaintiff pursuing a modification who enter into these Forbearance Agreements are relying on simultaneous promises from Chase and/or its Loan Servicers representatives that the agreements will: (1) help the homeowner obtain a modification; (2) not put the homeowner into

foreclosure; and (3) not affect the homeowner's credit. Importantly, served the same purpose within Chase and/or its Loan Servicers modification scheme, regardless of what version of Repayment Agreement is used. simultaneous promises from Chase and/or its Loan Servicers representatives that the agreements will help the homeowner obtain a modification.

98. Chase and/or its Loan Servicers extracts payments beyond those due under Chase and/or its Loan Servicers Forbearance Agreements by promising homeowners that a modification is forthcoming and that they should continue making payments as if pursuant to their Forbearance Agreement, even after the period outlined on the written document has ended. Indeed, the Plaintiff who enrolled in a Forbearance Agreement made more payments than required under the Agreement.

**A Prolonged Modification Process Leads to Unfair Outcomes for Mortgagors Which in Turn Benefit Chase and/or its Loan Servicers .**

99. In Plaintiff's experiences, described more fully throughout the Complaint, Chase and/or its Loan Servicers repeatedly stalls and delays making a final decision on modification applications in the promised timeframe by, among other things, claiming it is missing documentation necessary to evaluate the homeowners' eligibility for a modification, claiming documentation already provided has become outdated, and claiming that the file is "on the underwriter's desk." Meanwhile, Chase and/or its Loan Servicers persuade homeowners into continuing to make modified payments, promising that a modification will be forthcoming. Chase and/or its Loan Servicers also dual tracks mortgagors—initiating and actively pursuing foreclosure to pressure borrowers into making payments during an illusory and misleading modification process.

100. Plaintiff's experiences demonstrate "Chase and/or its Loan Servicers pattern and practice of deceptive and misleading conduct,. And while "Chase and/or its Loan Servicers' motives are not an element of any of Plaintiff's claims, Chase and/or its Loan Servicers profits from its protracted and misleading loan modification practices.

**"CHASE and/or its "LOAN SERVICERS" Profits From Increased Principal Balances and Extended Loan Terms.**

101. A mortgage servicer's primary source of income and primary asset is its collection of "Mortgage Servicing Rights" ("MSRs"). John McConnell, *Valuation of a Mortgage Company's Servicing Portfolio*, 11 J. OF FIN. & QUANTITATIVE ANALYSIS 433, 433 (1976). These are contracts with investors in mortgage loans, typically through mortgage backed securities, that: (a) require the mortgage servicer to perform servicing

duties such as collecting monthly payments from homeowners and transmitting them to the investor, sending notices and correspondence to homeowners, maintaining homeowner documentation, and managing homeowner escrow accounts; and (b) entitle the mortgage servicer to certain fees from the investor and the homeowner for performing these duties. *Id.*

102. The most important fee a mortgage servicer collects and its largest source of revenue is the "servicing fee." The servicing fee is a fixed percentage, typically 0.25-0.5%, of the principal balance of a mortgage loan, which the servicer collects on a monthly basis when it receives the mortgage payment from the homeowner. Simon Aldrich et al, *A Capital Markets View of Mortgage Servicing Rights*, 11 J. Fixed Income 37, 37 (2001).

103. Academics who have studied mortgage servicing rights have found that, as a result of the structure of the servicing fee, the most important factor in determining the value of a servicer's Mortgage Servicing Rights is the principal balance of the loans in its MSR portfolio. *See* McConnell, at 442 ("…the capitalized value of servicing increases as the original face amounts of the loans increase…"). As a result, "the value of a portfolio composed of larger loans is substantially greater than the value of a portfolio of smaller loans…" *Id.*

104. Another important factor in valuing mortgage servicing rights is the remaining term of the serviced loans. The reason for this is twofold: a servicer can expect to receive the servicing fee on a new loan for longer, and will receive a larger servicing fee in the present, since the servicing fee approaches zero as the principal is paid off. *See* McConnell, at 442 ("…the value of servicing new loans is greater than the value of servicing older loans…").

105. Thus, by increasing the principal balance of any given loan, or by extending the term of any given loan, a mortgage servicer can profit immediately by increasing the value of its Mortgage Servicing Rights.

106. When it does finally grant loan modifications after extensive delays, "Chase and/or its Loan Servicers  mortgage modification process results in both larger principal balances and longer loan terms than it would otherwise have on the same loans.

107. Indeed, servicers' motivation to accrue fees is further increased by the fact that "servicer often owns a share in companies which can be billed for ancillary services during the foreclosure process, and charge above market rates on these services." National Mortgage Servicing Standards and Conflicts of Interest, 112th Cong., at 10

(May 12, 2011) (written testimony of Laurie Goodman, Senior Director at Amherst Securities Group).

108. Thus, While Chase and/or its Loan Servicers receives up to $1,600 from the U.S. Government for each HAMP modification it processes, *see supra* section V.A.1, it stands to make thousands more by collecting fees and interest on loans that are past due, in default, or otherwise troubled.

109. While Chase and/or its Loan Servicers purportedly offers varying types of temporary payment plans to homeowners as a means to obtaining a modification, in practice they allow Chase and/or its Loan Servicers to extend the duration of the homeowner's delinquency, whether Chase and/or its Loan Servicers intends to modify or not.

110. For homeowners who *are not* eligible for a modification, Chase and/or its Loan Servicers benefits by delaying the eventual foreclosure while continuing to receive payments. *See supra* section VIII.D.2.

111. On the other hand, for homeowners who *are* eligible for a modification, Chase and/or its Loan Servicers benefits by increasing the homeowner have accrued arrearage. Final modifications that Chase and/or its Loan Servicers belatedly offered to mortgagors had principal balances much higher than the principal balances on the mortgages when the mortgage application process began.

112. Plaintiff's experiences set forth below illustrate Chase and/or its Loan Servicers pattern of deceptive, misleading, unfair, fraudulent and unlawful business practices. While the timing and sequence of phone calls, emails, letters, and numerous Forbearance/Modification Packages and other promises may vary slightly among Class members, the underlying conduct is the same. Chase and/or its Loan Servicers drags out the mortgage modification process. This unlawful conduct preys on the most vulnerable homeowners in their time of greatest stress, anxiety and desperation.

## COUNT IV

## PROMISSORY ESTOPPEL- MODIFICATION PROMISES AGAINST "JPMORGAN "CHASE BANK NA AND/OR ITS "LOAN SERVICERS" , "QUANTUM SEVICING CORPORATION" AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

113. Plaintiff readopts and restates paragraphs 1 through 112 as paragraph 112 of Count III.

114. Plaintiff brings this claim on the Modification Promises described above.

115.   Defendants made representations to Plaintiff and that if they performed under and/or following the conclusion of temporary agreements and payment plans, including the components thereof in the form of written agreements and plans, they would receive a permanent loan modification.

116.   Defendants intended to induce Plaintiff to rely on these representations and make both down payments and subsequent monthly payments pursuant to Defendants' verbal and written promises of permanent modifications, timely review of modification applications, and/or forbearance.

117.   Plaintiff did in fact reasonably rely on Defendants' representations, by submitting payments, as well as documentation requested by Defendants.

118.   Reliance by Plaintiff was reasonable.

119.   Reliance by Plaintiff was to his detriment. Plaintiff has lost opportunities to find other strategies to deal with his default and avoid foreclosure, such as restructuring his debt under the bankruptcy code, or pursuing other options to deal with his defaults, such as selling or renting the homes. In light of the declining real estate market in the United States since July 2009, failure to market and sell the property at that time has reduced the amount that Plaintiff can recover from such sale. Plaintiff and members of the Classes have faced financial harm, as well as undue psychological stress and damaged credit, and have given up valuable time and effort to meet Defendants' demands.

120.   Reliance by Plaintiff was to his detriment.   Plaintiff was not able to refinance his home because the several payments made to Chase and/or its Loan Servicers was never reported on his credit report.

121.   Plaintiff has yet to receive permanent loan modifications and/or forbearance in foreclosure processing. For Plaintiff who relied to his detriment on Chase and/or its Loan Servicers promises to modify, even a belated permanent modification does not cure his losses.

122.   The Plaintiff has been further harmed by the foreclosure of his homes after making payments under temporary modification programs that they would not have made had

they known that Defendants would refuse to permanently modify his home and/or foreclose in any event.

123. The Plaintiff brings the following claim for injunctive relief, on their own behalf and on behalf of each member of the designated Class described within the Count, against all Defendants. When greater details regarding the conduct of each Defendant become known,

124. Plaintiff has been denied opportunity to refinance his home because defendants have failed to report the timely monthly mortgage payments that Plaintiff has successfully tendered to Chase and/or its Loan Servicers.

125. Plaintiff credit has been adversely affected for several reasons including being forced to file an unnecessary emergency bankruptcy to Stop the Sale of his Real estate property.

## COUNT V

### INJUNCTIVE RELIEF- REFORMATION OF ACCOUNTS, CORRECTION OF CREDIT REPORTING, AND REFORMATION OF FINAL LOAN MODIFICATION AGREEMENTS AGAINST "JPMORGAN CHASE BANK NA AND/OR ITS "LOAN SERVICERS" " "QUANTUM SEVICING CORPORATION" AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

126. Plaintiff readopts and restates paragraphs 1 through 125 as paragraph 126 of Count V.

## COUNT VI

### BREACH OF CONTRACT/ BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING- LOAN MODIFICATION AGREEMENTS AGAINST "JP MORGAN "CHASE AND/OR ITS "LOAN SERVICERS" BANK NA", "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

127. Plaintiff readopts and restates paragraphs 1 through 99 as paragraph 127 of Count VI.

## COUNT VII

**PROMISSORY ESTOPPEL, IN THE ALTERNATIVE AGAINST "JP MORGAN "CHASE AND/OR ITS "LOAN SERVICERS" BANK NA", "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"**

128.   Plaintiff readopts and restates paragraphs 1 through 99 as paragraph 128 of Count VII.

## COUNT VIII

**INJUNCTIVE RELIEF- REFORMATION OF ACCOUNTS AGAINST "JPMORGAN CHASE BANK NA AND/OR ITS LOAN SERVICERS ", "QUANTUM SEVICING CORPORATION" AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"**

129.   Plaintiff readopts and restates paragraphs 1 through 99 as paragraph 129 of Count VIII.

## COUNT IX

**INJUNCTIVE RELIEF- REFORMATION OF FINAL MODIFICATION AGREEMENT AGAINST "JPMORGAN BANK NA AND/OR ITS LOAN SERVICERS" , "QUANTUM SEVICING CORPORATION", AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"**

130.   Plaintiff readopts and restates paragraphs 1 through 99 as paragraph 130 of Count IX.

## COUNT X

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C 1692, ET SEQ AGAINST "JPMORGAN CHASE BANK NA AND/OR ITS "LOAN SERVICERS" , "QUANTUM SEVICING CORPORATION" AND "RUSHMORE LOAN MANAGEMENT SERVICES LLC"

131. Plaintiff readopts and restates paragraphs 1 through 99 as paragraph 131 of Count X.

_____
Kenneth N. Thompson SR

Pro Se
Kenneth N. Thompson, SR
6644 Maple Ct
Monee, Il 60449
PH: 708-224-4647
FX: 708-224-4648

**And further, Affiant Sayeth Naught**

**UNDER PENALTIES OF PERJURY, I affirm that the facts in the forgoing are true and correct according to my own personal knowledge**

_____
Kenneth N. Thompson, Sr

**Before Me Personally appeared _Kenneth N, Thompson,_ SR who being me first duly sworn, executed the forgoing in my presence and stated to me that the facts therein Federal civil complaint are true and correct according to her own personal knowledge.**

**Subscribed and sworn to before me on this** 28th **day of** September **, 2012**

**A Notary Public for** Cook **County Illinois**

_____
Notary Public

**My commission expires:**

OFFICIAL SEAL
LATONIA R. JOHNSON-WA......
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-4-2014

**And further, Affiant Sayeth Naught**

# EXHIBITS START HERE

EXHIBIT 1

**EXECUTION VERSION**

Proceedings, and the Foreclosure Proceedings shall be stayed, during the term of this Agreement. The Borrower acknowledges and agrees that if it shall fail to comply with any of the terms or conditions of this Agreement, the Servicer shall be entitled to proceed immediately with the Foreclosure Proceedings.

    3.    <u>Condition to Agreement to Forbear; Repayment Plan Schedule</u>. The Borrower acknowledges and agrees that the Servicer's agreement to forbear as set forth in <u>Section 2</u> above, is expressly conditioned on the Borrower's payment of the following:

    a.    The Total Reinstatement Amount set forth in <u>Section 1</u>, due under the Note, is to be paid as follows:

| Loan Number | 0010015782 | |
|---|---|---|
| Due Date | | Amount |
| February 8, 2008 | $ | 3,160.00 |
| March 8, 2008 | $ | 3,159.33 |
| April 8, 2008 | $ | 3,159.33 |
| May 8, 2008 | $ | 79,449.23 |

    b.    Borrower acknowledges and agrees that the final payment under this Agreement may be significantly larger than prior payments under this Agreement. Borrower's regularly scheduled Monthly Payments due under the terms of the Note will resume following the receipt of the last payment under this Agreement.

    c.    If Borrower has established an Escrow Analysis or Advance Repayment Plan, it will be attached as Exhibit B to this Agreement. The Escrow Analysis or Advance Repayment Plan is designed to help you pay past due taxes or monthly insurance that Servicer has paid on your behalf. The amount shown as past due payments above in Section 1 and Subsequent Payments in this Section 3, includes these monthly amounts necessary to repay Servicer for these tax advances and insurance premiums.

    d.    Borrower further acknowledges that to the extent the term of the Escrow Analysis or Advance Repayment Plan goes beyond the term of the Forbearance Plan, the Escrow Analysis or Advance Repayment Plan shall remain in full force and effect, unless Servicer advises Borrower otherwise.

    4.    <u>Form of Payment</u>. The Borrower agrees to make payments due to the Servicer under <u>Section 3</u>, on or before the applicable Due Date, by one of the following methods: (a) Western Union Quick Collect; (b) cashier's check; (c) certified funds; or (d) money order.

Select Portfolio Servicing, Inc.
P.O. Box 65450
Salt Lake City, UT  84165-0450

 SELECT *Portfolio* SERVICING, *inc.*

February 27, 2008

EXHIBIT 2

#BWNJXZF
Kenneth N Thompson
6644 W Maple Ct
Monee, IL 60449-9241



Ildllhmdddlilllhlmdldhhmddlddlhldl

Dear Customer:                                                          Loan Number: 0010015782

Your forbearance payment in the amount of $3,159.33 is due on 03/08/2008.  If your payment has been sent, please accept
our thanks.  If payment will not be remitted as scheduled, please contact us today to make arrangements.  Our toll free
number is 1-888-818-6032.

Please be sure your payments are sent with sufficient time to be processed on or before the forbearance due date. In
order to ensure the timely processing of your payment, please include your loan number on your remitted payment.

You may make your payment by detaching the coupon below and sending it in the enclosed envelope.  You may
also send your payment via Western Union at code city: **OSWALD** & code state: **UTAH**.

Failure to maintain your payments as scheduled in the forbearance agreement may result in the termination of the
agreement and continuance of any pending legal actions or foreclosure proceedings that were halted as a result of
the forebearance agreement.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingües están a su
disposición para contestar cualquier pregunta llamando al teléfono 1-800-831-0118 y marque la opción 2.

**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**
Minnesota – This collection agency is licensed by the Minnesota Department of Commerce
LR234                        New York City – Collection Agency License #0987252

| Month & Year | Amount | Method of Payment |
|---|---|---|
| 120606 - 073007 | $ 11,196.21 | In Bankruptcy |
| 08  01  07 -11 31  07 | 0 | |
| 12  10  07 | $ 2,498.10 | chk # 5047 |
| 01  30  08 | $ 3,160.00 | Cashiers Check |
| 02  30  08 | $ 3,160.00 | Cashiers Check |
| 03  30  08 | $ 3,160.00 | Cashiers Check |
| 04  30  08 | $ - | |
| 05  30  08 | $ - | |
| 06  30  08 | $ - | |
| 07  30  08 | $ - | |
| 08  30  08 | $ - | |
| 09  30  08 | $ - | |
| 10  15  08 | $ 4,133.34 | Checks  5120 & 5150 |
| 11 11 08 | $ 6,200.01 | Western Union |

**Total**              $   **33,507.66**

EXHIBIT 3

**UNION**     Customer Receipt / Recibo del Cliente     www.westernunion.com

## EXHIBIT-4

```
GARFIELD & DAN RYAN C/E              Oper ID: BOB   Quick Collect
148 WEST GARFIELD BLVD               11/11/2008
CHICAGO IL 60609                     302P EST      MTCN: 035-422-4606

Sender/Remitente: KEN THOMPSON
Receiver/Destinatario: GREEN TREE SERVICING

Code City/Codigo de la ciudad: GTSAMEDAY MN
Account #/Numero de cuenta: 890073901
Reference #/Numero de referencia:
Attn/Atencion:
```

```
Western Union Card Number / Numero de Tarjeta 949590262
Total WU Card Points/Total puntos en tarjeta WU        : 20
Assigned WU Card Points/Puntos asignados a la tarjeta WU : 5
```

```
                            Amount/Cantidad:     $ 2066.67
                            Charge(s)/Cargos:
                              Service/Servicio:      12.99
                            Total/Total:         $ 2079.66
```

Send the gift of cash with Western Union; perfect for any holiday!
Visit www.WesternUnion.com to share holiday gift stories and send
free e-cards.
*****************************************************************
ADD PHONE TIME! Gold Card acts as a rechargeable LONG DISTANCE phone card.
Add time using cash at an Agent. Call 888-520-7924 to use credit/debit card.

Agent Signature /
Firma del Agente                  Customer Signature /
Firma del Cliente

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.
```

YOU EARNED 3 (INT'L) OR 10 (US) MINUTES OF PHONE TIME! Your time is
loaded directly on your card. Calling instructions are on the card
back, or dial 888-628-8862 & enter your personal PIN: 935505581268.

**WESTERN UNION**

**WESTERN UNION**

**Customer Receipt / Recibo del Cliente**          www.westernunion.com

EXHIBIT 4A                                    **Exhibit N:**

CRESTWOOD CE                Oper ID: 597   Quick Collect  **Pages 264-268**
13142 S CICERO              11/11/08
CRESTWOOD IL 60445          156P CST      MTCN: 201-724-1576

Sender/Remitente: KENNETH THOMPSON
Receiver/Destinatario: GREEN TREE SERVICING

Code City/Codigo de la ciudad: GTSAMEDAY MN
Account #/Numero de cuenta: 890073901
Reference #/Numero de referencia:
Attn/Atencion:

**PAID**

NOV 11 2008

CRESTWOOD CURRENCY
EXCHANGE, INC.
708-385-4767

Payout amount/Cantidad de pago: 4,133.34 US Dollar
Exchange Rate/Tipo de cambio:    1.0000000

Amount/Cantidad:      $ 4133.34
Charge(s)/Cargos:
  Service/Servicio:        12.99
Total/Total:          $ 4146.33

Debit Card/Tarjeta de Debito:
  Authorization Code 0062258
  Trace Number  062258
Send the gift of cash with Western Union; perfect for any holiday!
Visit www.WesternUnion.com to share holiday gift stories and send
free e-cards.

Agent Signature /                      Customer Signature /
Firma del Agente _____           Firma del Cliente _____

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. IF THE EXCHANGE RATE FOR YOUR TRANSACTION WAS DETERMINED AT THE TIME YOU SENT THE MONEY, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE ARE LISTED ON YOUR RECEIPT. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. SI EL TIPO DE CAMBIO PARA SU TRANSACCIÓN FUE FIJADO EN EL MOMENTO EN EL QUE ENVIÓ EL DINERO, LA MONEDA EN LA QUE SE HARÁ EL PAGO Y EL TIPO DE CAMBIO SE INDICARÁN EN EL RECIBO. DE LO CONTRARIO, EL TIPO DE CAMBIO SE FIJARÁ CUANDO EL DESTINATARIO RECIBA LOS FONDOS. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA ELEGIDO SE ESTABLECEN EN LAS AL REVERSO. AL FIRMAR ESTE RECIBO, USTED DECLARA QUE ESTÁ DE ACUERDO CON ESOS TÉRMINOS Y CONDICIONES.





*EXHIBIT 4 B*

Kenneth Thompson
6644 Maple Ct
Monee, Il 60449
708-646-5839 private fax 708-224-4648

January 21, 2011


Scott Conradson  & Crystal Valez                    VIA Certified Mail
Quantum Servicing, Inc                               7008-1140-0000-6477-9039
6302 E Martin Luther King Blvd Ste 300
Tampa. FL 33619


    Re: 2<sup>nd</sup> notice to Quantum of Disputes with all three servicers for loan # 5000054733)

Dear Mr. Conradson,

Please review the below disputes and contact me with Quantumns proposed resolution:


I.   Select Portfolio Services, Inc (SPS) = <u>Breach of Forbearance Agreement</u> dated February
     4, 2008.  Mr. Thompson **made three (3) contractual payments of $3159.33.** After
     SPS received Mr. Thompson three (3) payments the asset was transferred to
     Greentree who refused to acknowledge the agreement with SPS. (Exhibits 1-2)

II.  Greentree Servicing, LLC (GTS) = <u>Breach of Loan Modification agreement</u>. Mr. Thompson
     **made payments totaling $10,333.35 within a 30 day time frame** (10\15\08 to
     11\11\08) and GTS failed to execute the agreed Loan modification. (Exhibits 3-4)


III. Quantum Servicing, Inc = <u>Breach of contractual mortgage agreement</u>. On June 25, 2010
     a request from Quantum was made to Mr. Thompson to make payments in the
     amount of $2237.63. Mr. Thompson submitted Check # 1049 in the amount of
     $2237.63 **Quantum cashed Mr. Thompsons the check on July 20, 2010** and has
     refused subsequent payments from Mr. Thompson. (Exhibits 5-6)

Please review the facts surrounding all the Servicers involved above and let me know if a principle balance reduction and loan modification will be considered upon receipt of supporting documentation. I would hope we could resolve this matter without timely and expensive litigation.

Sincerely,

Kenneth Thompson

Bank of America | Online Banking | Transaction Image Print                      Page 1 of 1

**Bank of America** 🇺🇸                                              ~~Online Banking~~

CampusEdge checking - 3923 : Check Image

Check Image:



EXHIBIT 5

**Quantum** Servicing                    | A CLAYTON HOLDINGS COMPANY |

6302 E. Dr. Martin Luther King Blvd.
Suite 300
Tampa, FL 33619

09/10/2010

*EXHIBIT 6*

Kenneth Thompson

6644 W. Maple Ct

Monee, IL 60449

Case Number: 10-21662

Account Number: 5000054733

Check number 1057 in the amount of $2,237.63 is being returned to you for the following reason.

**The amount will not cure your arrearage.**

If you have any questions, please contact us at 1-877-817-3266 9:00 am to 6:00 pm EST

Monday through Friday.

KEENAN THOMPSON                           BANK OF AMERICA, NA                    1057
6644 MAPLE COURT                              70-480/819
MONEE, IL 60449
(708) 746-5162

Aug. 2, 2010

Pay to the
Order of   Quantum Servicing Corporation          $ 2237.63

Two Thousand Two Hundred & Thirty-Seven ——— 63/100  Dollars

032 0602 002610 60119P

Aug. Payment Acc't # 5000054733

⑈0010057⑈ ⑆081904808⑆ 002910563723⑈

EXHIBIT 8

William Spielberger
Spielberger & Associates, L. L. P
53 West Jackson Suite 1231
Chicago, Il 60604
Ph: 312-834-0519 Fax: 312-834-0542

August 20, 2012

James Dimon, CEO
JP Morgan Chase
270 Park Avenue
New York, NY 10017

Re: 6644 Maple Ct Monee, IL 60449 (Thompson, K loan # 5000054733)

Dear Mr. Dimon,

I have been retained by Mr. Thompson to represent him in a resolution to the below matters.

I.  Select Portfolio Services, Inc (SPS) = <u>Breach of Forbearance Agreement</u> dated February
    4, 2008.  Mr. Thompson **made three (3) contractual payments of $3159.33.** After
    SPS received Mr. Thompson three (3) payments the asset was transferred to
    Greentree who refused to acknowledge the agreement with SPS. (Exhibits 1-2)

II. Greentree Servicing, LLC (GTS) = <u>Breach of Loan Modification agreement</u>. Mr. Thompson
    **made payments totaling $10,333.35 within a 30 day time frame** (10\15\08 to
    11\11\08) and GTS failed to execute the agreed Loan modification. (Exhibits 3-4)

III. Quantum Servicing, Inc = <u>Breach of contractual mortgage agreement</u>. On June 25, 2010
     a request from Quantum was made to Mr. Thompson to make payments in the
     amount of $2237.63. Mr. Thompson submitted Check # 1049 in the amount of
     $2237.63 **Quantum cashed Mr. Thompsons the check on July 20, 2010** and refused
     future payments. Mr. Thompson commenced negotiations for a loan modification
     agreement and Quantum eventually accepted subsequent checks  monthly during a

period of May 11, 2011 to April 3, 2012 Totaling $26,851.06 and Quantum has refused subsequent payments from Mr. Thompson. (Exhibits 5-6)

IV. Rushmore Loan Management Services = Recently has become the new servicer of this asset and Rushmore has refused to honor all previous agreements above and placed the said property with a Sale Foreclosure date of September 5, 2012.

Please review the facts surrounding all the Servicers involved above and let me know if a principle balance reduction and loan modification will be considered upon receipt of supporting documentation. I would hope we could resolve this matter without timely litigation.

Sincerely,

William Spielberg, Esq.

Cc: Jennifer M. Vander Wagen,
   Codilis & Associates, P.C

EXHIBIT 9

William Spielberger
Spielberger & Associates, L. L. P
53 West Jackson Suite 1231
Chicago, Il 60604
Ph: 312-834-0519 Fax: 312-834-0542

August 20, 2012

Terry Smith, CEO                                    VIA Facsimile
Rushmore Loan Management Services                   949-453-9397
7515 Irvine Center Drive
Irvine, CA 92618

Re: 6644 Maple Ct Monee, IL 60449 (Thompson, K loan # 5000054733)

Dear Mr. Smith,

I have been retained by Mr. Thompson to represent him in a resolution to the below matters.

I.   Select Portfolio Services, Inc (SPS) = <u>Breach of Forbearance Agreement</u> dated February
     4, 2008.  Mr. Thompson **made three (3) contractual payments of $3159.33.** After
     SPS received Mr. Thompson three (3) payments the asset was transferred to
     Greentree who refused to acknowledge the agreement with SPS. (Exhibits 1-2)

II.  Greentree Servicing, LLC (GTS) = <u>Breach of Loan Modification agreement</u>. Mr. Thompson
     **made payments totaling $10,333.35 within a 30 day time frame** (10\15\08 to
     11\11\08) and GTS failed to execute the agreed Loan modification. (Exhibits 3-4)

III. Quantum Servicing, Inc = <u>Breach of contractual mortgage agreement</u>. On June 25, 2010
     a request from Quantum was made to Mr. Thompson to make payments in the
     amount of $2237.63. Mr. Thompson submitted Check # 1049 in the amount of
     $2237.63 **Quantum cashed Mr. Thompsons the check on July 20, 2010** and refused
     future payments. Mr. Thompson commenced negotiations for a loan modification
     agreement and Quantum eventually accepted subsequent checks  monthly during a

period of May 11, 2011 to April 3, 2012 Totaling $26,851.06 and Quantum has refused subsequent payments from Mr. Thompson. (Exhibits 5-6)

IV. Rushmore Loan Management Services = Recently has become the new servicer of this asset and Rushmore has refused to honor all previous agreements above and placed the said property with a Sale Foreclosure date of September 5, 2012.

Please review the facts surrounding all the Servicers involved above and let me know if a principle balance reduction and loan modification will be considered upon receipt of supporting documentation. I would hope we could resolve this matter without timely litigation.

Sincerely,

William Spielberg, Esq.

Cc: Jennifer M. Vander Wagen,
    Codilis & Associates, P.C

EXHIBIT 10

William Spielberger
Spielberger & Associates, L. L. P
53 West Jackson Suite 1231
Chicago, Il 60604
Ph: 312-834-0519 Fax: 312-834-0542

August 20, 2012

Attorney Jennifer M. Vander Wagen
Codilis & Associates, P.C
15W030 North Frontage Road Ste 100
Burr Ridge, IL 60527

Re: 6644 Maple Ct Monee, IL 60449 (Thompson, K loan # 5000054733)

Dear Ms. Vander Wagen,

I have been retained by Mr. Thompson to represent him in a resolution to the below matters.

I.   Select Portfolio Services, Inc (SPS) = <u>Breach of Forbearance Agreement</u> dated February 4, 2008. Mr. Thompson **made three (3) contractual payments of $3159.33.** After SPS received Mr. Thompson three (3) payments the asset was transferred to Greentree who refused to acknowledge the agreement with SPS. (Exhibits 1-2)

II.  Greentree Servicing, LLC (GTS) = <u>Breach of Loan Modification agreement</u>. Mr. Thompson **made payments totaling $10,333.35 within a 30 day time frame** (10\15\08 to 11\11\08) and GTS failed to execute the agreed Loan modification. (Exhibits 3-4)

III. Quantum Servicing, Inc = <u>Breach of contractual mortgage agreement</u>. On June 25, 2010 a request from Quantum was made to Mr. Thompson to make payments in the amount of $2237.63. Mr. Thompson submitted Check # 1049 in the amount of $2237.63 **Quantum cashed Mr. Thompsons the check on July 20, 2010** and refused future payments. Mr. Thompson commenced negotiations for a loan modification agreement and Quantum eventually accepted subsequent checks  monthly during a

period of May 11, 2011 to April 3, 2012 Totaling $26,851.06 and Quantum has refused subsequent payments from Mr. Thompson. (Exhibits 5-6)

IV. Rushmore Loan Management Services = Recently has become the new servicer of this asset and Rushmore has refused to honor all previous agreements above and placed the said property with a Sale Foreclosure date of September 5, 2012.

Please review the facts surrounding all the Servicers involved above and let me know if a principle balance reduction and loan modification will be considered upon receipt of supporting documentation. I would hope we could resolve this matter without timely litigation.

Sincerely,

William Spielberg, Esq.

Cc: Terry Smith, Rushmore

EXHIBIT 11A

CL118

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

August 11, 2011

Kenneth Thompson

6644 W Maple CT
Monee, IL 60449

RE: Property Address: 6644 W Maple Ct
                      Monee IL 60449
Mortgage Loan Number: 5000054733

Dear Kenneth Thompson,

Congratulations, your request for a payment arrangement on loan
number 5000054733 has been approved pending your prompt return of a
properly executed Agreement, two copies of which are enclosed.
Please read the enclosed documents, sign one copy where indicated and
return the signed copy to us within five business days of your receipt
of this letter, along with your initial cash payment (if applicable).
Please retain the other copy for your records.

It is your responsibility to contact Quantum if you are unable to bring
the loan current under the new payment schedule that is enclosed.

Quantum Servicing Corporation        Western Union Quick Collect
6302 E. MLK Blvd., Suite 300          City Code: QSC
Tampa, FL 33619                       State Code: FL

Feel free to call with any questions you may have. I may be reached
toll free at 1-888-885-2785.

Gersie Schweitzer

Loss Mitigation Department
Quantum Servicing Corporation

                    NOTICE
We are a debt collector. This is an attempt to collect a debt and any
information obtained will be used for that purpose.
if you have filed for bankruptcy or received a discharge in bankruptcy,
please be advised that this letter does not represent and is not
intended to be a demand for payment. You should consult legal counsel
regarding your obligation, if any, to pay on the mortgage loan.

> 5000054733/CL118/GS1/29498

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton
Portfolio Management Corporation. License: NC – 102821, NYC – 1283849

CL164

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

Loan Number: 5000054733

## FOREBEARANCE AGREEMENT

This Forebearance Agreement ("Agreement") is made and entered into as of
08-11-11 by and between Quantum Servicing Corporation ("Servicer")
as servicing agent for Arch Bay Holdings Llc ("Lender")
and Kenneth Thompson and ("Mortgagor").

### RECITALS

A. On 06-01-05, Mortgagor executed a promissory note ("Note") and
Mortgage ("Mortgage") in the principal amount of $ 330,400.
Quantum Servicing Corporation (hereinafter "Quantum") is servicing agent for
Note and Mortgage.

B. The amounts due on the Note are secured by the Mortgage on the real
property at 6644 W Maple Ct, Monee IL 60449
("the Property"). The Mortgage is a valid and enforceable lien on the
Property.

C. Mortgagor defaulted on the Note by failing to make the required monthly
payments and/or otherwise comply with the terms of the Note and Mortgage.

D. Mortgagor has defaulted on the Note and Mortgage, and the amount of the
arrearage is $ 177,653.21(including past due monthly payments
of principal interest and escrow (if applicable), late fees, advances for
delinquent property taxes and/or hazard insurance, property preservation
fees, attorney's fees and cost (the "Arrearage").

E. Mortgagor has requested that servicer enter into this Agreement to
provide Mortgagor with the opportunity to fully reinstate the Note and
Mortgage over the period of time to avoid completion of the Foreclosure
Action and judicial sale of the Property.

### Agreement

In consideration of the foregoing and other valuable consideration, the
receipt and sufficiency of which is hereby acknowleded, Servicer and
Mortgagor hereby agree as follows.

1. Accuracy of Recitals. Mortgagor acknowledges and agrees that the
statements made in the foregoing recitals are true ad accurate.

2. Bankruptcy Discharge.

   a. Mortgage Remains a valid lien. Mortgagor acknowledges that the Mortgage
   was a valid and enforceable lien on the Property at the time he/she filed
   and petitioned for a releif under Chapter 7 of the Bankruptcy Code; that
   such lien was not avoided; and that Lender, through its Servicer, has a
   right to enforce its lien notwithstanding the bankruptcy discharge.

   b. Statements and Notices. Mortgagor acknowledges the right to make
   voluntary payments to Servicer under the Bankruptcy Code notwithstanding the
   discharge of al personal liability on the Note. Mortgagor further
   acknowledges that Servicer's acceptance of such voluntary payments does not
   constitute a violation of the discharge injunction under Section 524 of the
   Bankruptcy Code.

   c. Statements and Notices. Mortgagor acknowledges that Servicer may send
   Mortgagor statements, correspondence and notices and that such conduct does
   not constitute a violation of the discharge injunction.

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation. License: NC – 102821, NYC - 1283849

CL1642

# Quantum
**Servicing**

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

3. Payments by Mortgagor as Partial Reinstatement. Mortgagor shall pay the entire Arrearage by making an initial payment of $ 2,272.16 plus 5 monthly payments of $ 2,272.16 each, in accordance with the following schedule :

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|------|------|------|------|
| 01 | 09/05/11 | 2,272.16 | 02 | 10/05/11 | 2,272.16 |
| 03 | 11/05/11 | 2,272.16 | 04 | 12/05/11 | 2,272.16 |
| 05 | 01/05/12 | 2,272.16 | | | |

The initial payment and all subsequent payments must be received in certified funds along with this executed Agreement to Servicer at the following address:

Quantum Servicing Corporation
6302 E. Martin Luther King Boulevard Suite 300
Tampa, FL 33619

4. No Grace Period. There is no grace period for making payments under this Agreement. Any payment received under this agreeeement that is not made on the required due date is considered late by the Servicer and the Servicer may, at its discretion, cancel this agreement without notice to the Mortgagor.

5. Forbearance Payments Subject to Change. Mortgagor acknowledges that the monthly payments under this Agreement may change if the regular monthly payment changes. The regular monthly payment may change if the interest rate is adjusted under the terms of the Note; the monthly escrow requirement changes based upon annual analysis; or Servicer advances funds for delinquent real estate taxes and/or hazard insurance on the Property. In the event that the regular monthly payment changes, Mortgagor must increase or decrease the payments set forth in the schedule above according to the change in the regular monthly payment.

6. Optional payments for insurance. If Mortgagor is currently making optional monthly payments for insurance such as accidental death or disability, Mortgagor must contact the insurance company to confirm the status of Mortgagor's policy. Motrgagor's policy may have cancelled as a result of the defaulte on the Note and Mortgage. Mortgagor is responsible to reinstate the insurance policy directly with the insurance company.

7. Servicer's Forbearance. Servicer shall forbear prosecution of the Foreclosure Action for such time as Mortgagor is not in breach of his/her obligations under this Agreeeement or will forbear initiation of a foreclosure acton so long as Mortgagor is performing under the terms of this agreement.
> 5000054733/CL164/GS1/29498

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation.  License: NC – 102821, NYC - 1283849

CL163

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

8. Default Not Waived. The Note and Mortgage shall remain in default and shall remain accelerated during the terms of this Agreeement and until the loan is fully reinstated. This Agreement is not intended to, and shall not, rescind or constitute a waiver of such default given under the Note and Mortgage. Such notice of default and the consequences thereof shall remain in effect and the notice of default shall be an instrument of record until withdrawn by Servicer.

9. Foreclosure Action Not Dismissed. Mortgagor acknowledges that during the term of this Agreement, any Foreclosure Actions initiated prior to this agreement shall remain pending and will not be voluntarily dismissed unless the Note and Mortgage are fully reinstated or paid off. Servicer may take any action reasonably necessary to maintain the pending status of the Foreclosure Action other than proceeding to judgment and judicial sale of the property.

10. Action by Other Parties. If any other party or future party to a Foreclosure Action seeks a judicial sale of the Property, Servicer shall be permitted to take whatever action is reasonably necessary to protect its interest in the Property and to retreive distribution of the proceeds of judicial sale.

11. Continued Accrual of Default-Related Fees and Costs. Mortgagor understands that during the terms of this Agreement, default-related fees and costs may continue to accrue. Upon completition of payments under this Agreement, Mortgagor must contact Servicer to confirm the amount of and arrange for payment of any accrued fees and costs. The Note and Mortgage shall not be considered fully reinstated untill all accrued fees and costs have been paid.

12. Effect of Agreement on Note and Mortgage. The Note and Mortgage shall remain in full force and effect notwithstanding the execution or performance of this Agreement.

13. Further Assurances. Mortgagor shall take or cause to be taken such actions and shall execute and deliver such documents and other papers, in a form and substance satisfactory to Servicer, as Servicer may reasonably require to carry out the provisions of this Agreement or to protect and preserve Servicer's rights under this Agreement or the Note and Mortgage.

14. Mortgagor's Failure to Comply with this Agreement. In the event that Mortgagor fails to make the monthly payments required by this Agreement; otherwise breaches his/her obligations under the Note and Mortgage; or files a petition under the bankruptcy Code, Servicer's forbearance obligation shall terminate, and Servicer may pursue all legal and equitable remedies available under applicable law including initiation or resuming a Foreclosure Action.

15. No Return of Payments. In the event that Mortgagor breaches this Agreement, any and all finds paid pursuant to this Agreement are non-refundable.

16. Non-Waiver. Failure or delay by Servicer to enforce compliance with any term or condition of this Agreement shall not constitute a waiver of such term or condition or a waiver of any other breach or default under the Note and Mortgage.

CL1632

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

17. Status After Completion of Payments under this Agreement. Mortgagor understands that upon pompletion of all payments required by this Agreement, thr Note and Mortgage will not be fully reinstated. Mortgagor must contact Servicer to make arrangements for full reinstatement of the Note and Mortgage by paying (1) the remaining Arrearage, and (b) all default-related fees and costs that accrued during the term of this Agreement. Full reinstatement must be paid in a lump sum or, at Servicer's discretion, over a period of time throuout an additional Forbearance Agreement. If Mortgagor fails to contact Servicer within five (5) business days of the completion of this forbearance agreement to make additional payment arrangements Servicer may, without notice to the Mortgagor, initiate a foreclosure action or resume any pending foreclosure action.

18. Severability. If any term or other provision of this Agreement is determined to be invalid or unenforceable under applicable law, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect. Upon such determination, Servicer and Mortgagor shall negotiate in good faith to modify this Agreement so as to affect the original intent of the parties.

20. Governing Law. This Agreement shall be constructed in accordance with the laws of the State in which Mortgagor(s) resides.

21. Entire Agreement; Amendment. This Agreement constitues the entire agreement between Servicer and Mortgagor and may be modified only by written instrument executed by both parties.

22. Multiple Counterparts. This Agreement may be executed in one or more counterparts, each of which, when taken together will all other counterparts, shall constitute one single, binding and integrated agreement.

23. Warranty Upon Execution of this Agreement. The consideration herein is contractual and not a mere recital. Serviser and Mortgagors have executed this Agreement after being fully informed of its terms, contents

24. Execution of this Agreement. Mortgagor must execute and return this Agreement with the initial forbearance payment by 090511 the executed Agreement by 090511 null and void.

25. MORTGAGOR ACKNOWLEDGES THAT HE/SHE HAS BEEN ADVISED BY LEGAL COUNSEL OR HAS HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL AND HAS DECIDED TO PROCEED WITHOUT LEGAL COUNSEL.

> 5000054733/CL163/GS1/29498

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation. License: NC – 102821, NYC - 1283849

CL162

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

IN WITNESS WHEREOF, the parties hereto have executed this Forbearance
Agreement as set forth below.

Date _____        _____
                            MORTGAGOR

Date _____        _____
                            MORTGAGOR

SUSCRIBED AND SWORN to before me on this _____ day of _____,
20_____ by MORTGAGOR.

                            _____
                            Notary Public

SUSCRIBED AND SWORN to before me on this _____ day of _____,
20_____ by MORTGAGOR.

                            _____
                            Notary Public

                            _____ LENDER _____

Date_____        By _____
                            Title _____

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton
Portfolio Management Corporation   License: NC – 102821, NYC - 1283849

*EXHIBIT 11B*

CL118

# Quantum
**Servicing**

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

April 25, 2011

Kenneth Thompson

6644 W Maple CT
Monee, IL 60449

> RE: Property Address: 6644 W Maple Ct
>                        Monee IL 60449
> Mortgage Loan Number: 5000054733

Dear Kenneth Thompson,

Congratulations, your request for a payment arrangement on loan number 5000054733 has been approved pending your prompt return of a properly executed Agreement, two copies of which are enclosed. Please read the enclosed documents, sign one copy where indicated and return the signed copy to us within five business days of your receipt of this letter, along with your initial cash payment (if applicable). Please retain the other copy for your records.

It is your responsibility to contact Quantum if you are unable to bring the loan current under the new payment schedule that is enclosed.

Quantum Servicing Corporation          Western Union Quick Collect
6302 E. MLK Blvd., Suite 300           City Code: QSC
Tampa, FL 33619                        State Code: FL

Feel free to call with any questions you may have.  I may be reached toll free at 1-888-885-2785.

Jonathan Rivera

Loss Mitigation Department
Quantum Servicing Corporation

                              NOTICE
We are a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.
if you have filed for bankruptcy or received a discharge in bankruptcy, please be advised that this letter does not represent and is not intended to be a demand for payment.  You should consult legal counsel regarding your obligation, if any, to pay on the mortgage loan.

> 5000054733/CL118/J31/29498

---

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation.  License: NC – 102821, NYC – 1283849

CL164



6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

Loan Number: 5000054733

FOREBEARANCE AGREEMENT

This Forebearance Agreement ("Agreement") is made and entered into as of 04-25-11 by and between Quantum Servicing Corporation ("Servicer") as servicing agent for Arch Bay Holdings Llc ("Lender") and Kenneth Thompson and ("Mortgagor").

RECITALS

A. On 06-01-05, Mortgagor executed a promissory note ("Note") and Mortgage ("Mortgage") in the principal amount of $ 330,400. Quantum Servicing Corporation (hereinafter "Quantum") is servicing agent for Note and Mortgage.

B. The amounts due on the Note are secured by the Mortgage on the real property at 6644 W Maple Ct, Monee IL 60449 ("the Property"). The Mortgage is a valid and enforceable lien on the Property.

C. Mortgagor defaulted on the Note by failing to make the required monthly payments and/or otherwise comply with the terms of the Note and Mortgage.

D. Mortgagor has defaulted on the Note and Mortgage, and the amount of the arrearage is $ 158,252.5(including past due monthly payments of principal interest and escrow (if applicable), late fees, advances for delinquent property taxes and/or hazard insurance, property preservation fees, attorney's fees and cost (the "Arrearage").

E. Mortgagor has requested that servicer enter into this Agreement to provide Mortgagor with the opportunity to fully reinstate the Note and Mortgage over the period of time to avoid completion of the Foreclosure Action and judicial sale of the Property.

Agreement

In consideration of the foregoing and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Servicer and Mortgagor hereby agree as follows.

1. Accuracy of Recitals. Mortgagor acknowledges and agrees that the statements made in the foregoing recitals are true ad accurate.

2. Bankruptcy Discharge.

   a. Mortgage Remains a valid lien. Mortgagor acknowledges that the Mortgage was a valid and enforceable lien on the Property at the time he/she filed and petitioned for a releif under Chapter 7 of the Bankruptcy Code; that such lien was not avoided; and that Lender, through its Servicer, has a right to enforce its lien notwithstanding the bankruptcy discharge.

   b. Statements and Notices. Mortgagor acknowledges the right to make voluntary payments to Servicer under the Bankruptcy Code notwithstanding the discharge of al personal liability on the Note. Mortgagor further acknowledges that Servicer's acceptance of such voluntary payments does not constitute a violation of the discharge injunction under Section 524 of the Bankruptcy Code.

   c. Statements and Notices. Mortgagor acknowledges that Servicer may send Mortgagor statements, correspondence and notices and that such conduct does

CL1642

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

3. Payments by Mortgagor as Partial Reinstatement. Mortgagor shall pay the
entire Arrearage by making an initial payment of $ 2,237.63 plus 4
monthly payments of $ 2,237.63 each, in accordance with the following
schedule :

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|----------|----------|------|----------|----------|
| 01 | 05/01/11 | 2,237.63 | 02 | 06/01/11 | 2,237.63 |
| 03 | 07/01/11 | 2,237.63 | 04 | 08/01/11 | 2,237.63 |

The initial payment and all subsequent payments must be received in
certified funds along with this executed Agreement to Servicer at the
following address:

Quantum Servicing Corporation
6302 E. Martin Luther King Boulevard Suite 300
Tampa, FL 33619

4. No Grace Period. There is no grace period for making payments under this
Agreement. Any payment received under this agreeement that is not made on
the required due date is considered late by the Servicer and the Servicer
may, at its discretion, cancel this agreement without notice to the
Mortgagor.

5. Forbearance Payments Subject to Change. Mortgagor acknowledges that the
monthly payments under this Agreement may change if the regular monthly
payment changes. The regular monthly payment may change if the interest rate
is adjusted under the terms of the Note; the monthly escrow requirement
changes based upon annual analysis; or Servicer advances funds for
delinquent real estate taxes and/or hazard insurance on the Property. In the
event that the regular monthly payment changes, Mortgagor must increase or
decrease the payments set forth in the schedule above according to the
change in the regular monthly payment.

6. Optional payments for insurance. If Mortgagor is currently making
optional monthly payments for insurance such as accidental death or
disability, Mortgagor must contact the insurance company to confirm the
status of Mortgagor's policy. Motrgagor's policy may have cancelled as a
result of the defaulte on the Note and Mortgage. Mortgagor is responsible
to reinstate the insurance policy directly with the insurance company.

7. Servicer's Forbearance. Servicer shall forbear prosecution of the
Foreclosure Action for such time as Mortgagor is not in breach of his/her
obligations under this Agreeement or will forbear initiation of a
foreclosure acton so long as Mortgagor is performing under the terms of this
agreement.
> 5000054733/CL164/J31/29498

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton
Portfolio Management Corporation. License: NC – 102821, NYC – 1283849

CL163

# **Quantum**
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

8. Default Not Waived. The Note and Mortgage shall remain in default and shall remain accelerated during the terms of this Agreeement and until the loan is fully reinstated. This Agreement is not intended to, and shall not, rescind or constitute a waiver of such default given under the Note and Mortgage. Such notice of default and the consequences thereof shall remain in effect and the notice of default shall be an instrument of record until withdrawn by Servicer.

9. Foreclosure Action Not Dismissed. Mortgagor acknowledges that during the term of this Agreement, any Foreclosure Actions initiated prior to this agreement shall remain pending and will not be voluntarily dismissed unless the Note and Mortgage are fully reinstated or paid off. Servicer may take any action reasonably necessary to maintain the pending status of the Foreclosure Action other than proceeding to judgment and judicial sale of the property.

10. Action by Other Parties. If any other party or future party to a Foreclosure Action seeks a judicial sale of the Property, Servicer shall be permitted to take whatever action is reasonably necessary to protect its interest in the Property and to retreive distribution of the proceeds of judicial sale.

11. Continued Accrual of Default-Related Fees and Costs. Mortgagor understands that during the terms of this Agreement, default-related fees and costs may continue to accrue. Upon completition of payments under this Agreement, Mortgagor must contact Servicer to confirm the amount of and arrange for payment of any accrued fees and costs. The Note and Mortgage shall not be considered fully reinstated untill all accrued fees and costs have been paid.

12. Effect of Agreement on Note and Mortgage. The Note and Mortgage shall remain in full force and effect notwithstanding the execution or performance of this Agreement.

13. Further Assurances. Mortgagor shall take or cause to be taken such actions and shall execute and deliver such documents and other papers, in a form and substance satisfactory to Servicer, as Servicer may reasonably require to carry out the provisions of this Agreement or to protect and preserve Servicer's rights under this Agreement or the Note and Mortgage.

14. Mortgagor's Failure to Comply with this Agreement. In the event that Mortgagor fails to make the monthly payments required by this Agreement; otherwise breaches his/her obligations under the Note and Mortgage; or files a petition under the bankruptcy Code, Servicer's forbearance obligation shall terminate, and Servicer may pursue all legal and equitable remedies available under applicable law including initiation or resuming a Foreclosure Action.

15. No Return of Payments. In the event that Mortgagor breaches this Agreement, any and all finds paid pursuant to this Agreement are non-refundable.

16. Non-Waiver. Failure or delay by Servicer to enforce compliance with any term or condition of this Agreement shall not constitute a waiver of such term or condition or a waiver of any other breach or default under the Note and Mortgage.

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation. License: NC – 102821, NYC - 1283849

CL1632

# Quantum
**Servicing**

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

17. Status After Completion of Payments under this Agreement. Mortgagor understands that upon pompletion of all payments required by this Agreement, thr Note and Mortgage will not be fully reinstated. Mortgagor must contact Servicer to make arrangements for full reinstatement of the Note and Mortgage by paying (1) the remaining Arrearage, and (b) all default-related fees and costs that accrued during the term of this Agreement. Full reinstatement must be paid in a lump sum or, at Servicer's discretion, over a period of time throuout an additional Forbearance Agreement. If Mortgagor fails to contact Servicer within five (5) business days of the completion of this forbearance agreement to make additional payment arrangements Servicer may, without notice to the Mortgagor, initiate a foreclosure action or resume any pending foreclosure action.

18. Severability. If any term or other provision of this Agreement is determined to be invalid or unenforceable under applicable law, all other terms and provisions of this Agreement shall nevertheless remain in full force and effect. Upon such determination, Servicer and Mortgagor shall negotiate in good faith to modify this Agreement so as to affect the original intent of the parties.

20. Governing Law. This Agreement shall be constructed in accordance with the laws of the State in which Mortgagor(s) resides.

21. Entire Agreement; Amendment. This Agreement constiues the entire agreement between Servicer and Mortgagor and may be modified only by written instrument executed by both parties.

22. Multiple Counterparts. This Agreement may be executed in one or more counterparts, each of which, when taken together will all other counterparts, shall constitute one single, binding and integrated agreement.

23. Warranty Upon Execution of this Agreement. The consideration herein is contractual and not a mere recital. Serviser and Mortgagors have execuated this Agreement after being fully informed of its terms, contents

24. Execution of this Agreement. Mortgagor must execute and return this Agreement with the initial forbearance payment by 04/29/11. Failure to return the executed Agreement by 04/29/11 will result in this Agreement becoming null and void.

25. MORTGAGOR ACKNOWLEDGES THAT HE/SHE HAS BEEN ADVISED BY LEGAL COUNSEL OR HAS HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL AND HAS DECIDED TO PROCEED WITHOUT LEGAL COUNSEL.

> 5000054733/CL163/J31/29498

Quantum Servicing Corporation dba AL – Quantum Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation.  License: NC – 102821, NYC - 1283849

CL162

# Quantum
### Servicing

6302 E. Martin Luther King Blvd., Suite 300, Tampa, FL 33619

IN WITNESS WHEREOF, the parties hereto have executed this Forbearance Agreement as set forth below.

Date _____          _____
                                MORTGAGOR

Date _____          _____
                                MORTGAGOR

SUSCRIBED AND SWORN to before me on this _____day of _____, 20_____ by MORTGAGOR.


                                _____
                                Notary Public

SUSCRIBED AND SWORN to before me on this _____day of _____, 20_____ by MORTGAGOR.


                                _____
                                Notary Public


                                LENDER

Date_____    By _____
                                Title _____

Quantum Servicing Corporation (Naba Quantum/Asset Servicing Corporation, NH – Quantum Asset Servicing, ND – Clayton Portfolio Management Services, TX – Clayton Portfolio Management Corporation.  License: NC – 102821, NYC - 1283849